UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, <br><br>                    Plaintiff, <br><br>          v. <br><br> NORTH BAY WATERPROOFING, INC., et al., <br><br>                    Defendants. | Case No.  12-cv-03339-JST <br><br> **ORDER GRANTING SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 37 |

In this declaratory judgment action, Plaintiff Atain Specialty Insurance Company f/k/a USF Insurance Company moves for summary judgment against Defendants North Bay Waterproofing, Inc. and Opus West Construction Corp. on the grounds that, as a matter of law, Atain does not owe a duty to defend or indemnify Defendants pursuant to the general commercial liability insurance policies at issue.  For the reasons stated below, the Court will grant the motion.

## I.     LEGAL STANDARD

The principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the fact may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  The Court must draw all reasonable inferences in the light most favorable to the non-moving party.  Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010).  However, unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment.  Surrell v. Cal. Water

United States District Court
Northern District of California

Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

Where the moving party bears the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).  Where the moving party would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything and summary judgment must be denied.  If, however, the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact.  Id. at 1102–03.

## II.      FACTS

### A.      Procedural History

Plaintiff Atain Specialty Insurance Company, formerly known as USF Insurance Company, filed this action on June 28, 2012, ECF No. 1, invoking diversity jurisdiction and seeking a declaratory judgment that it did not owe a duty to defend or indemnify North Bay Waterproofing, Inc. with respect to a lawsuit filed February 3, 2010 in Sonoma County Superior Court, styled STRS CA Ohio Real Estate Inv. 1, LLC v. Alcal/Arcade Contracting, Inc., et al., No. SCV-246738 (Super Ct.) ("the STRS Action").  Defendant North Bay has not appeared in this action and default has been entered against it.  ECF No. 12.  Atain filed a First Amended Complaint adding Defendant Opus West Construction Corp. on October 5, 2012.  Am. Compl., ECF No. 21.  Opus West answered November 26, 2012, ECF No. 31.

Atain now brings this motion.

## III.     UNDISPUTED FACTS

The parties agree on most of the relevant facts.  USF Insurance Company, now known as Plaintiff Atain, issued to North Bay three general commercial liability policies covering calendar years 2005, 2006, and 2007.  ECF Nos. 38-1, 38-2, 38-3.  The policies are substantially identical.

United States District Court
Northern District of California

2

Each policy insures North Bay for liability arising from its waterproofing work.  In particular, "Coverage A" of each insuring agreement provides coverage for claims made against North Bay for damages because of "bodily injury" or "property damage" caused by an "occurrence." Coverage A does not cover claims of "bodily injury" or "property damage" if the damage first manifested before the inception of the policy period.

Attached to each policy is a "Total Residential Exclusion" rider, identified as "Endorsement USF RBJ 048 12 03 98," which provides that the policy excludes coverage for "'property damage' . . . 'arising from' any work . . . in connection with any condominium, townhome, single family dwelling, and other residential or tract housing project."  ECF No. 38-1 p. 56, 38-2 p. 53, 38-3 p. 56.  The Total Residential Exclusion rider is reproduced below as it appears, in substantially identical form, in the 2005, 2006, and 2007 policies:

**USF RBJ 048 12 03 98**

**TOTAL RESIDENTIAL EXCLUSION – FORM B**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

The following exclusion shall be added to the policy and shall apply to any and all Sections and coverage parts of the policy.

This insurance does not apply to and the Company shall have no obligation to provide indemnity or defense against any "occurrence", "bodily injury", "property damage", "personal and advertising injury", incident or "suits" "arising from" any work or operations performed by you or any contractors or subcontractors working directly or indirectly on your behalf in connection with any condominium, townhome, single family dwelling, and other residential or tract housing project.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**Fig. 1, Bates No. ATAIN-000055, ECF No. 38-1 p. 56 (2005 policy)**

The STRS Action was filed on February 3, 2010, ECF No. 40-1.  In it, STRS brings claims for property damage against North Bay, Opus West, and numerous others in connection with work performed in the construction of an apartment complex located at 3680 Kelsey Knolls, Santa Rosa, California ("the Subject Property"); the First Amended Complaint in the STRS Action describes the Subject Property as "ten 3-story apartment buildings containing 124 residential dwelling units as well as a leasing office, pool and community center."  ECF No. 40-2 ¶ 39 ("STRS FAC").  The STRS FAC states: "In or around 2008, and thereafter, STRS discovered

water intrusion and other defects at the [Subject] Property." *Id.* ¶ 42.  STRS also alleges that Opus West was the general contractor for the construction of the Subject Property, and that North Bay was the waterproofing subcontractor. *Id.* ¶¶ 64–68.  The STRS FAC alleges that STRS purchased the Subject Property prior to discovering the defects, but does not specify when. *Id.* ¶ 39.

Opus West, in opposition, submitted several documents pertaining to the construction of the Subject Property.  In those documents, the Subject Property is sometimes referred to as "commercial," as well as "multifamily" and an "apartment complex." See, e.g., ECF Nos. 43-6, 43-7.  The Subject Property received its Notice of Occupancy, and passed final inspection, on September 13, 2005.  ECF No. 43-2.

Opus West also submitted a March 28, 2007 incident report prepared by the manager of the Subject Property describing an accident wherein a child stepped on and through a sinking area of a patio floor on the Subject Property, causing him to scrape his toes and skin, resulting in some bleeding.  ECF No. 43-3.  That incident report states, in part: "Turned around quickly and put more pressure on current area that was sinking (Contractor to be out Friday to start repairs) and foot went through." *Id.*  The report describes the child as a "resident" of the Subject Property, and states that the "Apartment patio was known to be sinking by resident." *Id.*

Atain submitted with its motion screenshots of the marketing website for the Subject Property, located at http://www.thebouldersfountaingrove.com, which is advertised as "The Boulders at Fountaingrove."  The website describes the Subject Property as "beautifully and intelligently planned residences" where occupants can "[l]ive a life without compromise."  ECF No. 39-6 pp. 2–3.  The website advertises community amenities, including a "Business Center," a "Resort Swimming Pool," a "Comprehensive Strength and Fitness Center," an "Elegant Resident Clubhouse," and "Professional Concierge Management." Id. p. 3.  The apartment amenities advertised on the website include "[f]our unique, one, two, and three bedroom designs," "[r]are three bedroom luxury flats," a "[s]tylish black appliance package," "[d]irect-access garage," and spacious closets, gourmet kitchens, and in-home washers and dryers. Id. p. 3–4.  On the home page, there is a titled "Resident Services" inviting users to "[l]ogin to pay your rent online, schedule maintenance, or contact management." Id. p. 2.  Finally, the center of the home page

United States District Court
Northern District of California

4

features a section titled "Check Availability" that states: "Ready to move in?  Enter your approximate move-in date to begin the process."  Id.

On October 10, 2011, Indian Harbor Insurance Company tendered the defense of the STRS Action on behalf of North Bay, its insured.  ECF No. 38-4.  Atain disclaimed coverage three days later.  ECF No. 38-5.  Indian Harbor tendered again on December 8, 2011, and Atain again disclaimed coverage.  ECF Nos. 38-6, 38-7.  Indian Harbor then tendered the defense of Opus West on March 2, 2012 because Opus West claimed to be an additional insured under North Bay's policies with Atain.  ECF No. 38-8.  Atain disclaimed coverage of Opus West, and of North Bay, on March 26, 2012.  ECF No. 39-5.  Atain filed the instant action in June 2012 seeking a declaration that it did not owe North Bay or Opus West a duty to defend or indemnify as a result of the STRS Action.

## IV.    REQUEST FOR JUDICIAL NOTICE

The Court may properly take judicial notice of matters in the public record pursuant to Federal Rule of Evidence 201(b).  A Court "shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  Accordingly, the Court grants Plaintiff Atain's unopposed request for judicial notice of several court filings in the STRS Action and Opus West's bankruptcy proceedings, ECF No. 40, and has considered those materials in ruling on the present motion.

## V.    JURISDICTION

This Court has subject matter jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332, and the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq..  See, e.g., Am. Cas. Co. of Reading, Penn. v. Krieger, 181 F.3d 1113, 1119 (9th Cir. 1999) (affirming discretionary exercise of jurisdiction over declaratory judgment action brought by insurer against insured based on diversity of citizenship).  Defendant Opus West does not contest the Court's jurisdiction.

## VI.    ANALYSIS

Atain argues that it is entitled to summary judgment because Defendants' work on the Subject Property falls within the scope of the "Total Residential Exclusion" contained in each of

United States District Court
Northern District of California

North Bay's 2005, 2006, and 2007 general commercial liability insurance policies. [1]  Opus West

argues that the project was "commercial," and that the Total Residential Exclusion does not apply.

To decide the present motion, the Court must construe this provision.

### A.    Rules of Policy Interpretation

In California, insurance policy interpretation is a question of law; courts must look first to

the explicit language of the contract to determine its plain meaning.  *See* Cal. Civ. Code §§ 1638,

1639 (West 2012); United Nat. Ins. Co. v. Spectrum Worldwide, Inc., 555 F.3d 772, 776 (9th Cir.

2009).  The fundamental purpose of contract interpretation is to give effect to the parties' mutual

intention as it existed at the time of contracting, provided it is ascertainable.  Cal. Civ. Code §

1636.  "Although they have special features, the ordinary rules of contractual interpretation apply

to insurance agreements." General Star Indemnity Co. v. Super. Court, 47 Cal. App. 4th 1586,

1592 (Cal. Ct. App. 1996) (citing La Jolla Beach & Tennis Club, Inc. v. Indus. Indemnity Co., 9

Cal. 4th 27, 37 (Cal. 1994)).  When contracting parties reduce their understanding to writing,

courts must base their interpretation solely on the writing wherever possible unless an exception

exists to justify resort to extrinsic evidence.  Id. § 1639.  If the language of a written contract is

"clear and explicit," and it does not "involve an absurdity," it governs.  Id. § 1638.

California courts interpret the words of a written contract according to their "ordinary and

popular sense, rather than according to their strict legal meaning; unless used by the parties in a

technical sense, or unless a special meaning is given to them by usage, in which case the latter

must be followed." Id. § 1644.  "Technical words" are to be construed "as usually understood by

persons in the profession or business to which they relate." Id. § 1645.

A policy provision is ambiguous when it is capable of two or more constructions, both of

which are reasonable.  Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995).  However, courts

---

[1] Atain moves for summary judgment on two grounds.  First Atain argues that the property damage at the Subject Property first manifested after the expiration of the policy periods of two of the three policies at issue.  Second, Atain argues that the "Total Residential" exclusion in the policies precludes coverage in any year, as set forth above.  Because the Court concludes that Atain's motion must be granted on the second ground.The Court does not reach the first argument. It is also worth noting that the first argument, even if successful, would not entitle Atain to summary judgment as to all insurance policies in the case.

United States District Court
Northern District of California

1  "will not strain to create an ambiguity where none exists."  Id.

2      In California, an insurer's duty to defend its insured is very broad.  An insured is entitled to

3  a defense if the underlying complaint alleges the insured's liability for damages is "*potentially*

4  covered under the policy, or the complaint might be amended to give rise to a liability that would

5  be covered under the policy."  Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 299 (Cal.

6  1993) (original emphasis).  An insured initially bears the burden of production in establishing

7  potential liability by reference to the factual allegations of the underlying action, the language of

8  the insurance policy, and any extrinsic evidence upon which the insured will rely.  Id.  The burden

9  then shifts to the insurer, who may only escape the duty to defend if it can "conclusively refute the

10  potential" for coverage.  Id.  See also Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025,

11  1032 (9th Cir. 2008).  California courts resolve any doubts as to the existence of the duty to

12  defend in favor of the insured.  Anthem Electronics, Inc. v. Pac. Employers Ins. Co., 302 F.3d

13  1049, 1054 (9th Cir. 2002).

14      The determination of whether an insurer owes its insured a duty to defend "is usually made

15  in the first instance by comparing the allegations of the complaint with the terms of the policy."

16  Id. at 1054; Manzarek, 519 F.3d at 1031.  Facts extrinsic to the underlying complaint may "also

17  give rise to a duty to defend when they reveal a possibility that the claim may be covered."

18  Anthem Electronics, Inc., 302 F.3d at 1054.  "For an insurer, the existence of a duty to defend

19  turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those

20  facts known by the insurer at the inception of a third party lawsuit."  Montrose Chem. Corp., 6

21  Cal. 4th at 295.  See also Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993).

22      At summary judgment, an insurer may extinguish the duty to defend only if it can

23  "conclusively negate coverage as a matter of law."  However, an insurer will succeed in avoiding

24  the duty to defend if its insured fails to make out a prima facie showing that the underlying action

25  falls within the coverage provisions of the policy.  Anthem Electronics, Inc., 302 F.3d at 1060.

26      **B.**    **Construing the Total Residential Exclusion**

27      The crux of the parties' dispute is over the meaning of the words "work or operations

28  performed . . . in connection with any condominium, townhome, single family dwelling, *and other*

United States District Court
Northern District of California

1    *residential or tract housing project*" (emphasis added).  The parties agree that the Subject Property

2    does not qualify as a condominium, townhome, or single family dwelling.  But Atain argues, and

3    Opus West disagrees, that the Subject Property fits under the "other residential or tract housing

4    project" catch-all such that North Bay's general commercial insurance policy excludes coverage

5    for liability stemming from the STRS Action.  The terms "residential" or "tract housing" are not

6    defined anywhere in the three insurance policies.

7         The property, known as "The Boulders at Fountaingrove," is an apartment complex with

8    124 "residential dwelling units," a leasing office, a pool, a gym, and a community center.  The

9    website describes the Subject Property as "beautifully and intelligently planned residences" where

10   occupants can "[l]ive a life without compromise."  ECF No. 39-6 pp. 2–3.  The apartment

11   amenities advertised on the website include "[f]our unique, one, two, and three bedroom designs,"

12   "[r]are three bedroom luxury flats," a "[s]tylish black appliance package," "[d]irect-access

13   garage," and spacious closets, gourmet kitchens, and in-home washers and dryers.  Id. p. 3–4.

14   Finally, on the home page, residents can log in to pay their rent.  Id. p. 2.  The only "commercial"

15   activity that occurs at the Subject Property is the leasing of the apartments located there.

16        In the context of this case, the Court finds that the term "residential" is not ambiguous, and

17   it includes the buildings at issue here.  The Subject Property, as an apartment building, falls within

18   the dictionary definition, and the everday meaning, of the term "residential" — that is, "serving or

19   used as a residence", 2 New Shorter Oxford English Dictionary 2561 (Clarendon Press 1993);

20   "connected with, entailing, or based on residence," *id.*, or "used as a residence or by residents,"

21   Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/residential

22   (accessed April 25, 2013).

23        Opus West argues that, despite the residential purpose of an apartment complex, the

24   Subject Property is, for purposes of the insurance policies at issue, "commercial" because (1) the

25   residential exclusion language does not explicitly include apartments, and (2) the project

26   documents refer to the project as "commercial."  Opus West also urges the Court to find that

27   "residential" in these policies refers to "shelter in exchange for monetary consideration without

28   transfer of title."  ECF No. 43 p. 15.  None of these arguments is persuasive.

8

United States District Court
Northern District of California

1

2    Opus West's first argument is foreclosed by the clear terms of the exclusion.  The catch-all

3    phrase "and other residential or tract housing project" envisions that structures not included in the

4    list of specific examples will nevertheless fall within the scope of the Total Residential Exclusion.

5    Opus West's next argument — that the project documents refer to the project as

6    commercial — must fail because it would render the terms of the exclusion meaningless.  The

7    developer of every project, residential or otherwise, hopes to profit from the development.  That is

8    the sense in which the word "commercial" is used in the project documents at issue here.

9    Condominiums, townhomes, and single family dwellings are all commercial projects for the

10   contractors.  And, to address Opus West's third, related argument, their commercial nature is even

11   greater where they are to be rented out, like an apartment complex.

12   Finally, Opus West's alternative construction of the word "residential" is unreasonable and

13   violates another of the "elementary rules" of insurance policy construction — that "policy

14   language is interpreted in its ordinary and popular sense and as a 'layman would read it and not as

15   it might be analyzed by an attorney or an insurance expert.'"  *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*,

16   32 Cal.4th 465, 471 (2004).  Ordinary people simply would not interpret the everyday word

17   "residential" to mean "shelter in exchange for monetary consideration without transfer of title."

18   Moreover, Opus West's alternative definition is not consistent with the language of the Total

19   Residential Exclusion itself.  Condominiums, townhomes, and other single family dwellings can

20   also, and often are, rented to private residents.

21   In short, the Court finds that the Total Residential Exclusion clearly and explicitly

22   excludes coverage for residential projects, and that the plain meaning of "residential" in the

23   exclusion includes within it structures like the Subject Property.   Because the Total Residential

24   Exclusion appears in identical form in the 2005, 2006, and 2007 policies, the Court finds that

25   Atain does not have a duty to defend Defendants North Bay and Opus West as a result of

26   construction done at the Subject Property, including in the STRS Action.[2]  Because Atain does not

27   _____

28   [2] Atain also moves for summary judgment on the 2005 and 2006 policies because, according to the
STRS FAC, the manifestation of property damage first occurred "in or around 2008," outside of

9

owe Defendants a duty to defend related to the construction of the Subject Property and the STRS

Action, it also does not have a duty to indemnify them.  See Waller, 11 Cal. 4th at 44; Manzarek,

519 F.3d at 1034.

**CONCLUSION**

Plaintiff Atain Specialty Insurance Company's Motion for Summary Judgment is

GRANTED.      Plaintiff is ordered to provide a proposed form of judgment to the Court within

ten days of this order.

**IT IS SO ORDERED**.

Dated:  April 30, 2012

_____
JON S. TIGAR
United States District Judge

---

those policy periods of coverage.  Because the Total Residential Exclusion precludes coverage for
all three policy years, the Court does not need to reach this question.  Accordingly, the Court
overrules Atain's objection to the admission of Exhibit 2 to the Weiner Declaration in support of
Opus West's opposition as moot because the Court has not considered or admitted Exhibit 2,
which pertains to the question of when the property damage first manifested.